UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jane Doe

v. Case No. 26-cv-123-SM-TSM
Opinion No. 2026 DNH 125

Trustpilot, Inc.

ORDER

Plaintiff Jane Doe, representing herself, brings state law claims against Trustpilot, Inc. that arise from responses to posts on Trustpilot's online consumer review platform.[1] Doc. no. 39. Doe alleges that Trustpilot's display of her personal identifying information on its platform, along with other actions and inaction, support her claims of invasion of privacy, negligence, intentional infliction of emotional distress, violation of New Hampshire's Consumer Protection Act, and appropriation of her name. Trustpilot moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of plaintiff's claims, arguing that section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230"), bars four of Doe's five claims, that Trustpilot's Terms of Use for its platform bars the claims, and that Doe has not alleged facts that support

[1] The court previously allowed plaintiff to proceed under a pseudonym. Doc. no. 51.

cognizable causes of action with respect to any of the five claims.[2]

## Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the court takes "the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."[3] Kolackovsky v. Town of Rockport, 165 F.4th 114, 119 (1st Cir. 2026) (internal quotation marks omitted). In addition to the complaint, the court may consider documents submitted with the complaint, when their authenticity is not challenged, and "other such documents that

---

[2] Plaintiff objected to the motion to dismiss; Trustpilot filed a reply, and plaintiff filed a surreply. Doc. nos. 45. 46, & 47.

[3] To clarify, well-pled facts are those that provide the detail for who, what, where, and when of the events supporting plaintiff's claim. See Crawford v. Salve Regina Univ., 178 F.4th 734, 744 (1st Cir. 2026). In contrast, plaintiff's conclusory statements, speculation about what might have happened and why, opinions, and legal arguments in the amended complaint are not well-pled facts and are not credited as facts for purposes of opposing the motion to dismiss. See Id.; Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004); CMTA, Inc. v. Dussault, et al., No. 25-cv-10490, 2026 WL 2078157, at *6 (D. Mass. July 17, 2026); Campbell v. Acadia Hosp., No. 26-cv-00262, 2026 WL 1434833, at *1 (D. Me. May 21, 2026), report and recommendation adopted, No. 26-CV-00262, 2026 WL 1557909 (D. Me. June 2, 2026).

are sufficiently referenced and/or relied upon in the complaint." Rivera v. Kress Stores of Puerto Rico, Inc., 30 F.4th 98, 102 (1st Cir. 2022).

The court may grant a motion to dismiss based on an affirmative defense, however "the facts establishing that defense must: (1) be definitively ascertainable from the complaint and other allowable sources of information, and (2) suffice to establish the affirmative defense with certitude." Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008); see also Clemente Props., Inc. v. Pierluisi-Urrutia, 165 F.4th 1, 11 (1st Cir. 2026) (holding that defendants may raise an affirmative defense in a motion to dismiss "provided that the facts establishing the defense [are] clear on the face of the plaintiff's pleadings") (internal quotation marks omitted). The rule is the same for an affirmative defense of immunity under Section 230. Monsarrat v. Newman, 28 F.4th 314, 318 (1st Cir. 2022); Affleck v. Harvard Crimson Inc. (Harvard Crimson), No. 24-cv-10802; 2025 WL 330577, at *2 (D. Mass. Jan. 29, 2025).

## Background

### A. Operative Complaint and Exhibits

Jane Doe filed an amended verified complaint, in which she stated that the facts alleged in the complaint are true and

correct to the best of her knowledge, information, and belief, and she signed the complaint subject to the penalties of perjury. Doc. no. 39. With the amended complaint, Doe filed nine appendices, which include information about her current medical condition, her enrollment in New Hampshire's Address Confidentiality Program, and communications with Trustpilot. Doc. no. 39, at 62 to 73.

The court granted Doe leave to supplement the amended complaint to provide allegations that would better identify the person who used the pseudonym Rae Lakjer to post reviews of Doe's publisher on Trustpilot's online platform. Doc. no. 52. Doe filed a supplement and other documents that far exceeded the scope of the court's order, but parts of the supplement were deemed responsive and will be considered for purposes of the motion to dismiss. Doc. no. 69. Doe's allegations in paragraphs 2, 3, 6(c), 8, 8(a), 8(b), 9, 10(a)-(d), 11, 11(a), 12, 12(a), 12(a)(i), 13, 14, 15(a)-(c), 16, and 17-20(a) of the supplement (doc. no. 54) are deemed to be the supplement allowed by the court's order. Id.

Trustpilot filed exhibits with its motion to dismiss, which are the declaration of the Director of Product Management at Trustpilot, James Williamson, with four exhibits. Doc. nos. 38-2 to 38-6. The declaration identifies the four attached exhibits. The first three exhibits pertain to Trustpilot's

Terms of Use and the fourth exhibit is a copy of the reply that Doe's publisher posted in response to Doe's posting about the publisher.

Doe objects to Trustpilot's exhibits on the grounds that they are extrinsic to the complaint and, if considered, would require conversion of the motion to dismiss to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). Doe also challenges the relevance of the first two exhibits. Doe filed additional exhibits with her surreply, which are a press release promoting her book published in November 2025, a screen shot of a search for business names showing her business and its address with her name, a copy of a filing in this case, and Doe's own declaration.

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court generally is limited to the allegations in the complaint. Fed. R. Civ. P. 12(b)(6) & 12(d). The court may consider documents and other materials that are extrinsic to the complaint only under narrow exceptions, such as when the materials are central to the plaintiff's claim, are sufficiently referred to in the complaint, or their authenticity is not disputed. García-Gesualdo v. Honeywell Aerospace of Puerto Rico, Inc., 135 F.4th 10, 13 (1st Cir. 2025); Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013).

In this case, Trustpilot's Exhibits A through D are sufficiently referenced in the complaint to fall within the exception to the general rule of exclusion. Exhibits A and B are screenshots to show what a user of the Trustpilot website would encounter when trying to post a review. Doe objects that they are not screenshots that were actually viewed in this case, but that is not the point. The screenshots provide context for Doe's allegations that she did not post on Trustpilot and is not bound by Trustpilot's Terms of Use. Exhibit C is a copy of Trustpilot's Terms of Use, which Doe cites 15 times in the amended complaint. While her claims do not arise from the Terms of Use, she sufficiently references it to allow its consideration. Exhibit D is a copy of Doe's post on Trustpilot, using her legal name, and her publisher's response, which are central to Doe's claims. Williamson's declaration introduces the Exhibits but does not otherwise provide extrinsic information. Similarly, Doe's exhibits appended to her surreply are sufficiently central to her claims to be considered without converting the motion to dismiss to a motion for summary judgment.

Therefore, in addition to the amended verified complaint and the cited sections of the supplement, the court considered Trustpilot' exhibits and Doe's appendices.[4]

B. Background Facts

As alleged in the amended complaint, Trustpilot operates an online consumer review platform that is governed by Trustpilot's Terms of Use. When a new user visits the website to post a review on Trustpilot's platform, they are prompted to sign in and are notified that by continuing to use the website they agree to Trustpilot's terms, conditions, and privacy policy. The website is accessible to the public for posting reviews of businesses and reviews from consumers.

Jane Doe uses the pen name BJ Rae and has written several books. She is a survivor of domestic violence, and, because of her continuing safety concerns, she is a participant in the New Hampshire Address Confidentiality Program. She has been diagnosed with Complex Regional Pain Syndrome along with other conditions that are triggered by stress. Doe, writing as BJ Rae, used publishing services provided by Millennium's Gate Publishing House ("MGPH").

[4] As discussed below, the motion to dismiss is granted based on Section 230 of the Communications Decency Act and on the merits of Doe's claims. For that reason, Trustpilot's defenses based on the Terms of Use are not addressed.

In the amended complaint Doe alleges that sometime before December 29, 2025, a person using the pseudonym Rae Lakjer opened a Trustpilot account and posted reviews of services provided by MGPH to Doe. Doe alleges that Rae Lakjer is not her and that although Doe may have referred to the Trustpilot account as her own, she did not create an account with Trustpilot and did not post the MGPH reviews under the pseudonym Rae Lakjer. Doe alleges that she did not know of the reviews posted under the pseudonym Rae Lakjer until the evening of December 29, 2025. Doe also alleges that the posts were "true and accurate reviews of her own experience that were posted on her behalf," that the "person who posted reviews on her behalf" could not bind her to the Trustpilot's Terms of Use; "[t]he reviews at issue were posted on [Doe's] behalf," and the posts were "a domestic-violence survivor's truthful, unobjectionable reviews." Doc. no. 39, ¶¶ 53, 54, 56, & 73.

In the supplement, Doe alleges that she did not know Rae Lakjer's identity when she filed the amended complaint but has since learned the identity of the person who used that pseudonym to create the Trustpilot account.[5] Doe identifies that person as

[5] Doc. no. 54, ¶ 2. The allegations about Rae Lakjer are all summarized from the responsive parts of the supplement, doc. no. 54.

"Person A."[6] She alleges that Person A is a friend who does not live with Doe, is not related to Doe, and has no financial interest in the lawsuit. Doe also states in the supplement that she is correcting "a characterization contained in paragraphs 53 and 54 of the Amended Complaint" that the person who posted the reviews on Trustpilot was acting on her behalf and states that "[n]o person posted on [Doe's] behalf." Doc. no. 54, ¶¶ 3, 22, & 23.

Doe alleges that Person A came to Doe's house on December 23, 2025, while Doe was at home but sleeping.[7] At Doe's house, Person A created the Trustpilot account under the user name Rae Lakjer using a laptop, but, Doe alleges, Person A does not remember whose laptop she used.[8] Person A registered the account using the email address persistentovercomer@gmail.com. Person A then posted a review of MGPH on the Trustpilot website.

Doe alleges that Person A posted the review because, during a prior telephone conversation, Doe said she was upset and

[6] Doe does not provide grounds for using a pseudonym "Person A" to identify the person who posted on Trustpilot using the pseudonym, Rae Lakjer. The court makes no determination as to whether that use of a pseudonym would be allowed.

[7] Doe alleges variously that she knew Person A came to use Doe's computer, that she was resting when Person A was there, and that she was sleeping.

[8] Doe alleges that Person A's ability to remember "small details" is affected by a traumatic brain injury. Doc. no. 54, ¶ 9.

frustrated about the way MGPH treated her. Doe alleges that she told Person A she did not want to do anything about that treatment and did not ask Person A to do anything for her. Doe alleges that Person A acted on her own because of concern for Doe. She further alleges that she did not know on December 23, 2025, that Person A posted reviews on Trustpilot.

Doe further alleges that Person A came back to Doe's house and made additional posts on Trustpilot about MGPH, using the name Rae Lakjer and using Doe's computer. Doe alleges that she gave Person A permission to use her computer because Person A does not have a computer. Doe alleges that she knew Person A was using the computer, but she alleges that she did not know Person A was making posts on Trustpilot.

Doe further alleges that in December of 2025 she allowed other friends to use her computer and that visitors are welcome in her computer room. She alleges that the computer room has two printers, a strong internet connection, and comfortable seating. She alleges that she did not consent to visitors using her computer for specific purposes or for any use the visitor "might make of it." Doc. no. 54, ¶ 15(b).

In response to Rae Lakjer's reviews, MGPH posted a reply on Trustpilot's platform on December 29, 2025. The reply stated that it needed to clarify points regarding Rae Lakjer's agreement with MGPH and also needed "to address a verification

issue." Doc. no. 50, at 5. MGPH wrote that the identity information they received for the publishing agreement with BJ Rae did not match the author's name and noted that the payment for services was made with a credit card in Jane Doe's name, not BJ Rae, which was not allowed under their policies. MGPH also stated that the payment had been refunded.

Doe was notified by her internet tracking service that her identifying information had been posted on Trustpilot. Doe sent an email to Trustpilot stating that she had been notified that MGPH "published privacy violations against [her] for a review that [she] didn't post." Doc. no. 39, at 64. She noted Trustpilot's policy for removing privacy violations quickly and demanded that Trustpilot remove MGPH's post immediately.

Felicia Jones[9] sent a "Notice of Intent to Pursue Legal Action" to Trustpilot on January 1, 2026, on behalf of Doe, demanding that Trustpilot immediately remove all references to Doe's legal name, her pen name BJ Rae, and her book titles; provide confirmation that the removal was complete, and provide written assurance that Trustpilot would not permit publication of identifying information in the future. Doc. no. 39, at 65-66. The notice also stated that Doe would seek $100,000,000.00

[9] Doe does not identify Felicia Jones or explain whether she authorized Jones to speak on her behalf. For that reason, it is unknown whether Jones is Person A or someone else.

in damages "for Trustpilot's role in the unauthorized publication of her personal information that has placed her life at serious risk" if Trustpilot did not comply with her demands. Id., at 65.

Trustpilot removed the MGPH post that included Doe's various names on January 26, 2026. More reviews of MGPH were posted, and MGPH posted another response on the Trustpilot platform on February 2, 2026, that again included Doe's legal name and her pen name and also included email addresses associated with Doe. Doc. no. 38-6. After trying unsuccessfully to work out the issue with MGPH, Doe notified Trustpilot on February 6 of MGPH's new post.

On February 7, Doe, using her own legal name, posted a review on MGPH's Trustpilot page titled, "The most unprofessional company ever!", that criticized MGPH's postings. Doc. no. 38-6. MGPH then sent a response to Trustpilot's Compliance Team asking for review and investigation into negative reviews of MGPH posted by four listed email addresses. Doc. no. 39 at 68. Trustpilot removed all of the MGPH reviews from the cited email addresses and suspended the associated account. Doe alleges that the deleted reviews "recounted [her] own truthful account of what [MGPH] had done to her." Doc. no. 38, ¶ 56. Trustpilot also removed the remaining MGPH posts.

Doe alleges that MGPH's posts and Trustpilot's responses caused her stress that has worsened her medical conditions. She alleges that Trustpilot's "display of the linkage between [Doe's] legal name and her protected pen name destroyed the central protection on which [her] safety and life depend."[10] Doc. no. 39, ¶ 66. She further alleges that because of her concerns she "can no longer safely remain in her current residence and must incur the cost of another secure, age-in-place home." Id.

C. Procedural Background

Doe filed suit against Trustpilot in state court on January 5, 2026, and the case was sealed. Doc. no. 1-1. Trustpilot removed the case to this court on February 20, 2026, and maintained the seal. Doc. no. 1. Doe sought to remand the case to state court, which relief was denied. Doc. no. 19. Doe moved to stay the case because of personal obligations and medical issues, and the court granted a two-month stay. Doc. no. 20.

[10] Despite Does's predictions of dire consequences from the publication of her identifying information, fortunately, she does not report any actual threatening or harmful incidents perpetrated by her ex-husband against her during the eight months since the identifying information was posted.

Doe then moved for entry of default against Trustpilot. Doc. no. 25. She also filed an emergency motion seeking "emergency relief to immediately reduce the stress being imposed on [her]" due to litigating the case. Doc. no. 26. She also sought a preliminary injunction to protect her from her ex-husband, and an order expediting the case and remanding it to state court. In the same motion, she notified the court that Doe's husband would proceed as the plaintiff in the event of her death. Both the motion for default and the motion for emergency relief were denied. Doc. no. 27.

The court scheduled a status conference for May 27, 2026, after the two-month stay. Long moved to appear by telephone and also moved for scheduling accommodations, citing her health issues including "systemic autonomic dysfunction." Doc. nos. 32 & 33. The court granted Long leave to appear by telephone but denied the other requested accommodations. The court also set a deadline for dispositive motions. Trustpilot moved to dismiss in accordance with the schedule. Doc. no. 38.

Doe filed a verified amended complaint, which the court allowed under Federal Rule of Civil Procedure 15(a)(1)(B), and Trustpilot filed a renewed motion to dismiss. Doc. nos. 38 & 39.

Doe alleges five claims under New Hampshire law.[11] Doc. no. 39. Count I is a claim for invasion of privacy. Count II is a claim for negligence. Count III is a claim for intentional infliction of emotional distress. Count IV is a claim for violation of the New Hampshire Consumer Protection Act, N.H. RSA 358:10. Count V is a claim for appropriation of name/likeness. Trustpilot moved to dismiss. Doc. no. 38. While Trustpilot's motion to dismiss was pending, the court granted Doe's motion to proceed under a pseudonym. Doc. no. 51. The court also granted Doe leave to file a supplement to her amended complaint to address Rae Lakjer's identity (doc. no. 52), and she filed a supplement as noted above (parts of doc. no. 54).

## Discussion

Trustpilot moves to dismiss Counts I through IV invoking the immunity provided by Section 230(c)(1) and moves to dismiss all five claims under Trustpilot's Terms of Use and on the merits of each claim. Doe objects, arguing that her claims are not barred by Section 230 because she alleges liability based on Trustpilot's own conduct, that Trustpilot's Terms of Use do not bar her claims, and that she states actionable claims in each

[11] The amended complaint is 49 pages long with 128 paragraphs.

count. For the reasons that follow, the motion to dismiss is granted.[12]

A. Section 230 and Counts I - IV

Section 230 of the Communications Decency Act arose from Congress's concerns about online service providers' liability for content filtering.[13] Free Speech Coal., Inc. v. Paxton, 606 U.S. 461, 475 n.4 (2025). "Section 230 states that '[n]o provider or user of an interactive computer service shall be

---

[12] It is not necessary to address the effect of Trustpilot's Terms of Use on Doe's claims, as they are dismissed on other grounds.

[13] The Supreme Court explained:

> A year before the [Communication Decency Act's] enactment, a New York court had held that an online service provider could be held liable as a publisher for defamatory posts by third-party users because the provider had "held itself out as" "a family oriented computer network" that screened out inappropriate content. *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, 1995 WL 323710, *2 (Sup. Ct. N. Y., May 24, 1995). In response, the CDA added a new § 230 to the Communications Act of 1934. § 509, 110 Stat. 137–139 (codified as amended at 47 U.S.C. § 230). Section 230 provides that computer service providers (1) shall not "be treated as the publisher or speaker of any information provided by" a third party, and (2) shall not "be held liable" for good-faith actions to restrict access to material that they consider to be "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable," or to enable others (such as users) to restrict access to such material. § 230(c).

Free Speech, 606 U.S. at 475, n.4.

treated as the publisher or speaker of any information provided by another information content provider,' . . . [and] it further provides that '[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." Monsarrat, 28 F.4th at 318 (quoting 47 U.S.C. §§ 230(c)(1) & (e)(3)). "The term 'information content provider' means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."[14] 47 U.S.C.A. § 230(f)(3).

Because of Section 230's protection, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions — such as deciding whether to publish, withdraw, postpone or alter content — are barred." Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d 12, 18 (1st Cir. 2016) (internal quotation marks omitted); see also Duffer v. Nextdoor, Inc., 701 F. Supp. 3d 86, 89 (D. Mass. 2023).

[14] Section 230(c)(2) provides that "[n]o provider or user of an interactive computer service shall be held liable on account of . . . any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." Trustpilot does not rely on the immunity provided under Section 230(c)(2). For that reason, good faith is not an issue for purposes of the motion to dismiss.

Further, "'(1) web site operators . . . are provider[s] . . . of an interactive computer service; (2) message board postings do not cease to be information provided by another information content provider merely because the construct and operation of the web site might have some influence on the content of the postings; and (3) immunity . . . cover[s] any claim that would treat [the website] as the publisher.'" Affleck v. Harvard Crimson Inc. (Harvard Crimson), No. 24-cv-10802, 2025 WL 330577, at *3 (D. Mass. Jan. 29, 2025) (quoting Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 419 (1st Cir. 2007)) (further internal quotation marks omitted). "[I]mmunity under Section 230 should be broadly construed." Monsarrat, 28 F.4th at 318 (internal quotation marks omitted).

In this case, the allegations in Doe's amended complaint establish that Trustpilot is a provider of an interactive computer service through its online platform. Further, MGPH made postings on the platform as a third-party information provider. Doe's efforts to avoid the immunity provided by Section 230 necessarily fail.

Doe directly addresses Section 230 immunity in the amended complaint, stating that she "does not sue for the publication of [MGPH's] post; she sues for [Trustpilot's] own conduct — its commercial exploitation of her identity, the safety undertakings it published and then disregarded, and its own selective,

retaliatory removal of the reviews recounting her experience." Doc. no. 39, ¶ 68. She asserts in her amended complaint that her "claims do not depend on the nature of any third party's post or on its algorithmic amplification, but on Defendant's own appropriation of her identity, its own undertakings, and its own displaying of her identity linkage." Id., ¶ 70B. She further alleges that Trustpilot "is itself an information content provider of the linkage at issue [publication of Doe's pen name, legal name, and book titles], so the harmful information was not, in the relevant sense, 'provided by another." Id., ¶ 70C.

In her objection to the motion to dismiss, Doe contends that, as published on Trustpilot, her post about MGPH and MGPH's reply in February 2026 was a "composite page [Trustpilot] assembled" and that her claims arise from "the linkage [Trustpilot] derived." Objection, doc. no. 45-1, ¶ 12. Contrary to Doe's theory, however, publishing the two posts in a particular format and with certain features that are content neutral does not make Trustpilot a content provider. See Dryoff v. Ultimate Software Gr., 934 F.3d 1093, 1099 (9th Cir. 2019); accord Suddeth v. Meta Platforms, Inc., No. 25-cv- 08581, 2026 WL 810252, at *2 (N.D. Cal. Mar. 24, 2026); Does 1-9 v. Murphy, No. 20-cv-00947, 2025 WL 2533961, at *20 (D.S.C. Sept. 3, 2025). Similarly, if the Trustpilot platform had a search feature that allowed users to find information posted about Doe, that feature

facilitated communication but was content neutral and not communication itself. See Doe v. Grindr Inc., 128 F.4th 1148, 1152-53 (9th Cir. 2025). Therefore, Doe does not allege facts sufficient to show that Trustpilot's platform or display of Rae Lakjer's and MGPH's posts and later Doe's post made it a content provider.

The effect of Section 230 on Counts I through IV and the merits of those claims are addressed as follows.

1. Invasion of Privacy - Count I

In Count I, Doe alleges invasion of privacy by public disclosure of private facts about her identity in MGPH's posts. New Hampshire recognizes the tort of invasion of privacy for disclosure of private facts, which "involves the invasion of something secret, secluded or private pertaining to the plaintiff" and publicity of that private matter. Karch v. BayBank FSB, 147 N.H. 525, 535 (2002) (internal quotation marks omitted). Publicity in this context means "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Id.

The "private facts" of Doe's legal name, pen name, email addresses, and the books she authored were posted by MGPH on Trustpilot's platform, linking Jane Doe to her identity as an

author.[15] Under the protection provided by Section 230, Trustpilot is not liable for any harm caused by MGPH's posts that disclosed Doe's various identities, the books she authored, and her email addresses. Doe argues, nevertheless, that Trustpilot linked that information so that it identified her, and, that Trustpilot was motivated by its own commercial interests in its platform and in her identifying information. But those assertions are not supported by the facts alleged.[16] MGPH posted that information on Trustpilot's website, and under Section 230 Trustpilot is not liable for the harm that posting may have caused.

Therefore, Count I is barred by Section 230.

---

[15] Although Doe alleges that information about her identity was private before MGPH's postings on Trustpilot, the surrounding circumstances suggest otherwise. Doe's authorship of books related to her abuse, her efforts to publicize her books under the pseudonym BJ Rae, her use of her legal name in letters to a local newspaper, her friend's use of the pseudonym Rae Lakjer (a combination of Doe's pen name and her husband's last name), and the fact that Doe's ex-husband knows her legal name demonstrate that Doe's identity and the location where she lives may not have been kept as private as Doe represents. Doe nevertheless insists that the linkage between her legal name, pen name, books, and email addresses in MGPH's posts invaded her privacy because someone could follow that information to a press release about her books that includes North Conway, New Hampshire, as the location of the publisher. The circumstances that Doe references for locating her, however, were at least in part the result of her own actions, which undermines her expectations of privacy in that information.

[16] As discussed above, to the extent the linkage Doe alleges is a content neutral search feature, that does not bar application of Section 230.

2. Negligence – Count II

Doe alleges that Trustpilot was negligent because it "collected, licensed, indexed, displayed, and commercially exploited [Doe's] identifying information." Doc. no. 39, ¶ 89A. She further alleges that "[a] party that undertakes to handle and commercially exploit a person's identifying information owes a duty of reasonable care not to do so in a manner that creates a foreseeable risk that the information will be used to locate and harm her."[17] Id. In support, Doe cites Remsburg v. Docusearch, Inc., 149 N.H. 148 (2003).

In Remsburg, the New Hampshire Supreme Court stated that under New Hampshire law, "[a]ll persons have a duty to exercise reasonable care not to subject others to an unreasonable risk of harm." Id. at 154. The court held that "threats posed by stalking and identity theft lead us to conclude that the risk of criminal misconduct is sufficiently foreseeable so that an investigator has a duty to exercise reasonable care in

[17] Doe cited a web page to show that Trustpilot "holds itself out as the data controller responsible for such personal data (https://corporate.trustpilot.com/legal/for-businesses/us-privacy-laws-supplement/dec-2024)." Doc. no. 39, ¶ 89A. That webpage is not available due to the security and compliance policies of the court. Doe did not file a printed version of the web page. The court, therefore, did not consider information that may be available on the cited web page.

disclosing a third person's personal information to a client." Id. at 155.

Trustpilot published the information that MGPH posted on its interactive website. Doe provides no factual allegations to show that Trustpilot acted as an investigator or that Trustpilot otherwise disclosed information to a third party. Instead, MGPH posted the information. Section 230 bars liability under state law when the defendant, like Trustpilot, is an interactive computer service and liability is based on information provided by someone else. § 230(c)(1). Therefore, merely displaying information provided by a third party (MGPH) is protected by Section 230.

Doe repeatedly alleges that she seeks to hold Trustpilot liable for its own conduct, which she alleges was "displaying and commercially exploiting the linkage of [Doe's] identities on its for-profit platform without reasonable care for the foreseeable danger that conduct created." Doc. no. 39, ¶ 92. She makes many conclusory statements in the amended complaint, such as, "she sues for Defendant's own conduct - its commercial exploitation of her identity, the safety undertakings it published and then disregarded, and its own selective, retaliatory removal of the reviews recounting her experience," without facts to support her conclusions. Doc. no. 39, ¶ 68. Those statements do not allege facts to show, for example, how

Trustpilot commercially exploited her identity. In the absence of factual support, Doe's conclusory statements have no effect. Therefore, as alleged in the amended complaint, Doe's negligence claim is barred by Section 230(c)(1).

In her objection to the motion to dismiss, Doe goes further and asserts that Trustpilot was not a provider of an interactive computer service but instead was an information content provider that is not protected by Section 230. "The term "information content provider" means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). She asserts that Trustpilot collected information about her, licensed and indexed that information, and displayed it, which makes Trustpilot an information content provider. The facts alleged in the amended complaint, however, tell a different story. MGPH posted the information about Doe's various identities, and Doe alleges no facts to show that Trustpilot did anything to collect, license, or index MGPH's information.[18]

---

[18] Doe alleges: "MGPH posted a business reply; [Trustpilot] gathered [Doe's] separate identities and displayed the connection among her legal name, pen name, book titles, and email addresses as a single searchable, indexed record." Doc. no. 39, ¶ 70C. Doe alleges no facts to show that Trustpilot "gathered" her separate identities. If Doe is referring to MGPH's reply to "Rae Lakjer's" reviews, posted on December 29, 2025, she has not alleged facts to show that Trustpilot rather

"[Section 230(c)(1)] shields from liability all publication decisions, whether to edit, to remove, or to post, with respect to content generated entirely by third parties." California v. Meta Platforms, Inc., No. 24-7032, 2026 WL 2292281, at *5 (9th Cir. Aug. 10, 2026) (internal quotation marks omitted).

Based on the well-pled factual allegations in Doe's amended complaint, Trustpilot published MGPH's information on the Trustpilot website. A negligence claim, along with any other claim, based on publication of information provided by a third party on an interactive computer platform is barred by Section 230. See Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1102 (9th Cir. 2009), as amended (Sept. 28, 2009). In addition, Doe does not coherently allege facts to show that Trustpilot owed her a duty not to display the information provided by MGPH, which undermines a negligence claim. Count II is dismissed.

---

than MGPH gathered and posted that information. See Doc. no. 39, at 67. If she is referring to MGPH's reply identified as "February 2026," she again alleges no facts to show that Trustpilot was involved in posting that reply rather than simply publishing it. To the extent Doe points to formatting information in the post, that is not communication outside the protection of Section 230. Further, simply stating conclusions, such as that Trustpilot gathered, collected indexed, and licensed information about Doe, does not allow the court to take those conclusions as true. See, e.g., Kolackovsky, 165 F.4th at 119.

### 3. Intentional Infliction of Emotional Distress – Count III

"Under New Hampshire law, the 'standard for making a claim of intentional infliction of emotional distress is very high.'" Brunstad v. Brunstad, No. 24-CV-264-SE, 2026 WL 893248, at *9 (D.N.H. Mar. 31, 2026) (internal quotation marks omitted). "To state a claim, 'a plaintiff must allege that a defendant by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to another," and extreme and outrageous conduct occurs only when the conduct goes "beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" Id. (quoting Tessier v. Rockefeller, 162 N.H. 324, 341 (2011)). "'[W]ith respect to the third element (severe emotional harm), [t]he law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.'" Melendez v. Univ. of New Hampshire, No. 23-cv-00172, 2024 WL 3522177, at *9 (D.N.H. July 2, 2024), report and recommendation adopted, No. 23-cv-172, 2024 WL 3519809 (D.N.H. July 24, 2024) (quoting Doe v. West Alton Marina, LLC, 646 F. Supp. 3d 315, 322 (D.N.H. 2022)).

Doe alleges that Trustpilot's decision to delete the reviews of MGPH posted by Rae Lakjer and to suspend that account while leaving MGPH's account open for a month was extreme and

outrageous conduct that caused her emotional distress. Importantly, the elements of the tort of intentional infliction of emotional distress are considered from an objective or reasonable person perspective, not from Doe's personal view of that conduct. The events Doe alleges were not extreme or outrageous conduct. As a result, Count III fails to state an actionable claim on the merits.

In addition, Trustpilot's decision to suspend Rae Lakjer's account and to remove her reviews while leaving MGPH's account open for a short period of time is an editorial decision that is protected under Section 230.[19] Klayman v. Zuckerberg, 753 F.3d 1254, 1359 (D.C. Cir. 2014); Barnes, 570 F.3d at 1103; Meta Platforms, No. 24-7032, 2026 WL 2292281, at *5; Ligon v. Meta Platforms Inc., No. 25-cv-03959, 2026 WL 1146091, at *10 (N.D. Cal. Apr. 28, 2026) (holding that a claim based on "Defendant's

---

[19] Doe relies on Teatotaler, LLC v. Facebook, Inc., 173 N.H. 442 (2020), to rebut Trustpilot's immunity under Section 230. The New Hampshire Supreme Court held in Teatotaler that Section 230 applied to the extent that plaintiff's claim was based on defendant's decision to remove plaintiff's account and the content, data, and followers in the account. Id., at 452. The court held, however, that to the extent the claim was based on promises made by defendant to plaintiff in its Terms of Use, as a breach of contract claim, Section 230's immunity for a publisher did not apply. Id., at 453. Doe does not bring a breach of contract claim and could not do so because she alleges that Rae Laker (Person A) opened the Trustpilot account, so that Doe was not a party to the Trustpilot's Terms of Use. Therefore, that part of the holding in Teatotaler is inapposite to this case.

decision to continue publishing other content while removing Plaintiff's content" was barred by § 230(c)(1) and "section 230(c)); Doe v. Friendfinder Network, Inc., 540 F. Supp. 2d 288, 296 (D.N.H. 2008).

Doe's reference to Moody v. NetChoice, LLC, 603 U.S. 707 (2024), misses the point.[20] In Moody, the Supreme court held that major social-media platforms, like "editors, cable operators, and parade organizers," interfere with protected speech when they curate the information provided to them in order to combine "'multifarious voices' to create a distinctive expressive offering." Moody, 603 U.S. at 738. That occurs when individual messages originate with third parties, but the platform chooses to publish the posts to convey its own message, that is, when the platform's offering is "the product of a wealth of choices about whether — and, if so, how — to convey posts having a certain content or viewpoint." Id. As alleged, in this case, Trustpilot combined nothing and conveyed no message but instead managed the publishing responsibilities of its online platform, which included removing objectionable posts

[20] Doe also cites Anderson v. Tiktok, 116 F.4th 180 (3d Cir. 2024). That case addresses liability of an interactive computer services provider for curation or compilation of information into the provider's "own expressive activity." Id. at 183. As above, the allegations do not show that Trustpilot compiled any information provided to it into its own post or other expressive activity.

made by Rae Lakjer and then removing MGPH's posts in response.

Doe's intentional infliction of emotional distress claim, Count III, is dismissed.

### 4. New Hampshire Consumer Protection Act – Count IV

Doe alleges that Trustpilot violated the New Hampshire Consumer Protection Act, RSA 358-A:2, by displaying her identity on its platform when it represented to its users that it would protect community safety. She cites Trustpilot's safety policies and faults Trustpilot for not immediately removing MGPH's posts with information about her identity in accord with its policies. She argues that her claim is based on Trustpilot's own actions in not complying with its policies.

RSA 358-A:2 provides: "It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." The statute provides a list of actionable deceptive acts and practices that is not exclusive, but "[w]hen the challenged conduct is not listed in RSA 358-A:2, to be actionable it must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Quality First Sols., LLC v. Dartmouth-Hitchcock Health, No. 25-cv-274, 2026 WL 2475300, at *13 (D.N.H. Aug. 24, 2026) (internal quotation marks omitted). Unethical

and unscrupulous activities, including submitting fraudulent invoices and paying kickbacks, are actionable under RSA 358-A:2. Id. Similarly, allegations that a defendant made misrepresentations to induce a plaintiff's purchase so that defendant could earn a commission state an actionable claim. Homes Dev. Corp. v. Edmund & Wheeler, Inc., No. 21-cv-0633, 2022 WL 4586480, at *21 (D.N.H. Sept. 29, 2022).

On the other hand, merely breaking a promise generally is not conduct that meets the rascality test. Collision Commc'ns, Inc. v. Nokia Sols. & Networks OY, 687 F. Supp. 3d 201, 222 (D.N.H. 2023). To the extent Doe plausibly alleges that Trustpilot made any representations about safety to her, which is, at best, unclear, she merely alleges breach of a promise. See Klayman, 753 F.3d at 1359 (discussing alleged breach of safety provision in Facebook's statement of rights and responsibilities). Doe does not allege actions by Trustpilot that meet the rascality test for a violation of RSA 358-a:2.

In addition, Trustpilot's cited conduct, that is, taking too long in Doe's view to remove the posts with her identity information, falls squarely within the immunity provided by Section 230. "Indeed, the very essence of publishing is making the decision whether to print or retract a given piece of content . . . ." Klayman, 753 F.3d at 1359. The "alleged failure to delete content" from a platform "falls within the

heartland of what it means to be the 'publisher' of information under Section 230(c)(1)." Force v. Facebook, Inc., 934 F.3d 53, 65 (2d Cir. 2019); see also Duffer, 701 F. Supp. 3d at 89. Therefore, Doe's claim under New Hampshire's Consumer Protection Act, Count IV, is also dismissed.

B. Appropriation of Name or Likeness – Count V

Doe alleges that Trustpilot exploited her pen name and her book titles by displaying them on its platform and that those actions constitute the tort of appropriation of her name or likeness.[21] New Hampshire recognizes the tort of appropriation of a plaintiff's name or likeness. Richards v. Union Leader Corp., 176 N.H. 789, 803 (2024); Thompson v. C & C Research & Dev., LLC, 153 N.H. 446, 450 (2006). In so doing, New Hampshire adopted the elements of the tort as developed in Restatement (Second) of Torts § 652C. Remsburg, 149 N.H. at 157. Liability exists if the defendant "appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." Id., at 158. "Appropriation is not actionable if the person's name or likeness is published for purposes other than taking

[21] Trustpilot does not assert immunity under Section 230 for this claim based on the exception provided under 47 U.S.C. § 230(e)(2).

advantage of the person's reputation, prestige or other value associated with the person." Id.; accord White v. Ortiz, No. 13-CV-251, 2015 WL 5331279, at *4 (D.N.H. Sept. 14, 2015).

While Doe alleges that Trustpilot displayed her pen name and her book titles, that is not the whole story. MGPH posted Doe's pen name and book titles and the post was published on Trustpilot's platform. Doe states in conclusory form that Trustpilot "took advantage of the reputation, goodwill, and commercial value associated with her authorial identity," but she provides no facts to show that happened. Instead, she refers to Trustpilot's Terms of Use that she alleges asserts "a worldwide license to use, publish, and display the content on its platform and to make it available to [Trustpilot's] paying business customers for promotion." Doc. no. 39, ¶ 115. Doe alleges no use, publication, or display of her information by Trustpilot separate from MGPH's posts and Doe's own post. To the extent Trustpilot may have had a license to make that information available to its customers, Doe does not allege that happened. As such, Doe does not allege an actionable claim that Trustpilot appropriated her name, and Count V is dismissed.

## Conclusion

For these reasons, Trustpilot's motion to dismiss (doc. nos. 38 & 77) is granted. All of Doe's claims are dismissed

with prejudice. Doe's motion to participate in electronic filing (doc. no. 64) is denied as moot.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Steven J. McAuliffe
United States District Judge

September 8, 2026

cc: Jane Doe, pro se
Counsel of Record